Nathan J. Hoines
Kelli A. Cummings
Hoines Law Office, P.C.
401 3rd Avenue North,
PO Box 829
Great Falls, Montana 59403
Phone: (406)761-0996
Fax: (406)761-3856

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JAY SPRINGER,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHERN ENGINEERING<br><br>AND CONSULTING, INC. (NECI),<br><br>Defendant. | Case No. CV-22-35-GF-BMM-JTJ<br><br>PRELIMINARY PRETRIAL STATEMENT |

By Order of this Court, Plaintiff, Jay Springer, hereby submits his preliminary Pretrial Statement, by and through his counsel of record, Hoines Law Office, P.C., as follows:

## **BRIEF FACTUAL OUTLINE**

This is case is about the wrongful discharge, blacklisting, and breach of duties for which Defendant, Northern Engineering & Consulting, Inc., (herein referred to as "NECI") is liable to Plaintiff, Jay Springer.

On or about November 12th, 2021, Defendant, NECI, sent a letter of termination to Plaintiff, Jay Springer, claiming that cause for termination was a lack of work. Prior to this

termination, Springer had been employed with NECI for approximately nine (9) years (since October 8th, 2012). At the time of his termination, Springer was managing and overseeing approximately sixty-one (61) projects from the NECI Havre office. Of these projects, twenty-six (26) had commenced in 2021 with contract amounts totaling nearly three-hundred-fifty-thousand dollars ($350,000). It is evident from the language of the November 12th, 2021, letter of termination sent to Springer that the NECI's board members had met, either on or about November 12th, 2021, to deliberate Springer's termination. Springer was never given notice of this meeting.

Per NECI's employee handbook, the termination process requires an exit interview be performed when termination is involuntary, during which the termination checklist, pay information, and unemployment benefits- among other matters- are to be discussed. Springer was never offered nor given an exit interview and the termination checklist, pay information, unemployment rights, benefit continuation, and other important matters were not discussed in the manner nor setting delineated by the NECI employee handbook.

In their November 12th, 2021, employment termination letter to Springer, Defendant, NECI, made explicit representation to Springer that NECI would work with him to transition non-direct Tribal contracts to ongoing projects and potential projects to Springer. In response, Springer sent a list of such ongoing projects and potential projects to NECI via electronic mail, and communicated in his message that these were the projects he would like to assume upon his exit from NECI. On November 16th, 2021, Springer advised NECI-via electronic mail- that he understood that his phone, which he purchased, would be taken of NECI's Verizon account. However, per NECI's explicit representation to Plaintiff of their willingness to work with him during his transition out of their employment, Springer requested that NECI make the necessary

Plaintiff's Preliminary Pretrial Statement- 2

authorizations to Verizon for Springer to keep his phone number, so that he could continue to conduct his business during his transition out of and upon his exit from NECI employment. NECI failed to do so and on November 22nd, 2021, Springer's phone service was disconnected. As a result of NECI's failure to provide the requisite information and authorizations to Verizon, Springer was unable to retain the phone number associated with his business operations. Springer lost at least one project due to his client's inability to contact him at the disconnected number. This is documented in an electronic mail exchange between this client and Springer. This documentation was provided as an exhibit in Plaintiff's Complaint, originally filed with the Montana Twelfth Judicial District Court.

Springer began purchasing shares of stock in NECI in September, 2020. By the time his employment was terminated in November, 2021, Springer had purchased fifty-two (52) shares of stock. Subsequent to terminating Springer's employment, NECI sought to purchase all of Springer's stock in NECI pursuant to the Stock Purchase Agreement. In their November 12th, 2021, letter to Springer (in which they terminated his employment) NECI claimed that the third-quarter valuation of the company was $467.50 per share and offered to purchase Springer's shares for a total of $24,310.00. However, after Springer rebutted NECI's severance package, NECI recanted their previous company valuation and claimed- without providing supporting documentation or evidence- that the third-quarter valuation of the company was $378.48 per share. NECI expressed their intention to purchase Springer's fifty-two (52) shares at this unexplained, unsupported lower valuation.

Further, NECI had originally agreed to purchase Springer's fifty-two (52) shares in a lump sum payment. However, NECI rescinded this offer without explanation and without

Plaintiff's Preliminary Pretrial Statement- 3

Springer's consent, and informed Springer that the purchase of his fifty-two (52) shares would be made over the course of sixty (60) payments.

On February 4th, 2022, NECI again reneged on their previous purchase agreement with Springer, this time sending him a letter, signed by NECI board members, stating that Defendant's fifty-two (52) shares of stock had been canceled. Defendant was not given any advance notice.

As a result of the personal, professional, and financial damages that Plaintiff has suffered as a direct and proximate result of NECI's wrongful actions, done in fraud and with actual malice, Plaintiff filed a Complaint in this matter with the Montana Twelfth Judicial District Court on February 23rd, 2022.

## JURISDICTION AND VENUE

There are no issues of Jurisdiction or Venue in this matter, which is properly set before this Court.

## FACTUAL BASIS OF EACH CLAIM

The facts for each claim are based upon NECI's termination of the Plaintiff's employment without cause. NECI failed to provide Plaintiff the due process for employment termination as afforded in the NECI employee handbook. NECI failed to uphold their obligations to Plaintiff during his transition out of their employment by not providing requisite authorizations to Verizon regarding Plaintiff's retention of his business phone number. As a result of NECI's failure, Plaintiff suffered professional and financial damages by losing existing and potential projects due to clients being unable to contact Plaintiff at his work number. NECI failed to purchase Plaintiff's fifty-two (52) shares of stock for the agreed amount. As a result of

Plaintiff's Preliminary Pretrial Statement- 4

NECI's failure, Plaintiff suffered financial damage by his fifty-two (52) shares of stock, which he had purchased, being canceled without proper compensation or advance notice.

## LEGAL THEORIES

Plaintiff's claims against the Defendant are based upon Count I: Wrongful Discharge under Mont. Code Ann. § 39-2-904(1)(b); Count II: Wrongful Discharge under Mont. Code Ann. § 39-2-904(1)(c); Count III: Blacklisting pursuant to Mont. Code Ann. § 39-2-803; Count IV: Breach of Shareholder Agreement; and, Count V: Breach of Fiduciary Duty.

### COUNT I: WRONGFUL DISCHARGE UNDER MONT. CODE ANN. § 39-2-904(1)(b)

The Defendant, NECI, wrongfully discharged Plaintiff, Jay Springer, from their employment when they terminated his employment without good cause, despite Jay Springer being a contracted employee who had completed his probationary period. While Defendant, NECI, cited a lack of work as the cause for Springer's employment termination, this reason is evidently fallacious and pre-textual. At the time of termination, Springer was managing over sixty (60) ongoing projects, a sizeable portion of which had started that same year, and had potential projects in prospect. Therefore, Defendant discharged Plaintiff from their employment without cause, in violation of Mont. Code Ann. § 39-2-904(1)(b).

### COUNT II: WRONGFUL DISCHARGE UNDER MONT. CODE ANN. § 39-2-904(1)(c)

After wrongfully terminating Plaintiff's employment, Defendant further failed to provide Plaintiff with an exit interview, as required by Defendant's own policies regarding employment termination. Defendant's own personnel policy expressly provides that employees facing termination, who are contracted and have successfully completed a probationary period- as Plaintiff had, will be afforded an exit interview. By failing to provide this requisite exit interview

Plaintiff's Preliminary Pretrial Statement- 5

to Plaintiff, Defendant denied Plaintiff a fair and reasonable opportunity to remain under their employment and, in doing so, violated Mont. Code Ann. § 39-2-904(1)(c). Additionally, Defendant violated its own bylaws by failing to provide Plaintiff with proper, prior notice that a meeting would be held to deliberate Plaintiff's termination. As such, Defendant violated Mont. Code Ann. § 39-2-904(1)(c).

### COUNT III: BLACKLISTING

Plaintiff clearly communicated with Defendant, in a timely and reasonable manner, that Plaintiff would need to retain the phone number associated with his work phone (which he had purchased) in order to obtain future employment and to retain professional contacts. Plaintiff further assured Defendant that he understood his number would be removed from Defendant's Verizon account and asked that, in doing so, Defendant would give Verizon the proper authorizations for Defendant to retain his business phone number.

Plaintiff made only reasonable requests from Defendant, requests which directly impacted Plaintiff's prospective work opportunities in transition out of Defendant's employment. Defendant failed to provide this reasonable accommodation by giving necessary authorization to Verizon regarding Plaintiff's work number. As a direct and proximate result, Defendant's actions prevented prospective clients from contacting Plaintiff to hire him. Further, Plaintiff lost projects as clients could not reach him. These actions, or failures to act, impeded Plaintiff's ability to mitigate his damages and prevented Plaintiff from being able to secure other employment.

Further, Defendant has continued to interfere with Plaintiff's pending business arrangement with prospective clients. On one such occasion, Plaintiff was in negotiations with a pending client, a FedEx building in Havre. When time came for the project to begin NECI

refused to give the client Mr. Springer's contact information and, reversely, refused to give Mr. Springer the client's contact information. As such, NECI effectively assumed control of the project and blatantly interfered with Plaintiff's ability to secure projects post-termination. Given Defendant's repeated, overt blacklisting, Plaintiff requests damages pursuant to Mont. Code Ann. § 39-2-803.

## COUNT IV: BREACH OF SHAREHOLDER AGREEMENT

Plaintiff and Defendant entered into a Stock Purchase Agreement in September of 2020 in which both parties agreed to be bound by the terms of Defendant's 2012 Stock Purchase Agreement. By the time of his employment termination in November, 2021, Plaintiff had purchased fifty-two (52) share of stock in NECI. Defendant's 2012 Stock Purchase Agreement expressly outlines that valuations of the company's shares will be made quarterly and that purchases of stock shares upon employee termination will be made at fair value based upon the quarterly valuations.

Defendant provided Plaintiff with the company quarterly valuation, reflecting that each share was worth approximately $476.50, and offered to purchase Plaintiff's shares pursuant to the Stock Purchase Agreement for $24,778.00. However, without any evidence to support devaluation, Defendant recanted and instead claimed that each share was worth approximately $378.48. Defendant's offer thereby fell to $19,680.96, a non-evidenced $5,097.04 decrease. This substantially undervalued Plaintiff's shares.

Defendant's termination of Plaintiff's employment was a pretext to repurchase the shares that Plaintiff had rightfully purchased in the company. Defendant's unexplained, non-evidenced, decreased quarterly company valuation was an attempt by Defendant to significantly undervalue

Plaintiff's stock shares in order to repurchase them from Plaintiff at a lower price. Defendant's pre-textual termination of Plaintiff's employment, misreporting of the value of its shares, and attempt to undervalue the company in order to manipulate the repurchase price of Plaintiff's stock shares grossly violate the Stock Purchase Agreement to which Defendant and Plaintiff are bound, and further, violate Mont. Code Ann. §35-14-732.

### COUNT V: BREACH OF FIDUCIARY DUTY

Defendant, NECI, being engaged in employment contract with Plaintiff and being engaged in a Stock Purchase Agreement with Plaintiff, owes the duties of utmost good faith and loyalty to Plaintiff. By wrongfully discharging Plaintiff from their employment, failing to properly transition Plaintiff out of their employment in a manner that afforded him opportunity to pursue other employment, and attempting to undervalue Plaintiff's stock shares in order to manipulate their repurchase price, Defendant breached their fiduciary duty owed to Plaintiff and directly and proximately caused Plaintiff personal, professional, and financial damage.

### **COMPUTATION OF DAMAGES**

This case involves claims for damages incurred by Defendant's breach of duties owed to Plaintiff, damages incurred from Defendant's wrongful termination of Plaintiff's employment, damages incurred by Defendant's prevention of Plaintiff retaining other employment, and damages incurred from Defendant's actual fraud and malice. As discovery in this matter is pending, the exact damages for these claims are not yet determinable. However Plaintiff's initial estimation of damages is as follows.

1) Lost wages are owed in the approximate amount of $106,000 multiplied by four years ($424,000), with four years of Plaintiff's current pay subtracted, which is indeterminable at

this time. This amount is calculated based on Plaintiff's earnings and fringe benefits with NECI and Plaintiff's current earnings, including 401K loss, but excluding bonuses- which would equal an additional $32,000. As discovery has not yet been completed in this matter, this calculation is not final; the Plaintiff anticipates this figure to increase as information is revealed in the discovery process.

2) Minimum compensation owed to Plaintiff for the assumption of his fifty-two (52) shares of NECI stock is $24,778.00. This calculation is based on the original company quarterly evaluation that Defendant provided to Plaintiff. However, as discovery in this matter has not occurred, the exact valuation of these shares- and thereby compensation owed to Plaintiff- is presently unknown. It is Plaintiff's belief that this valuation will significantly increase through discovery revelations. This initial calculation is made pursuant to Mont. Code Ann. § 35-14-732; Mont. Code Ann. §27-1-311.

3) Punitive damages in this matter are owed to Plaintiff pursuant to Mont. Code Ann. § 39-2-803; Mont. Code Ann. § 39-02-905; Mont. Code Ann. §27-1-311, due to Defendant's actual fraud and malice, blacklisting, and pre-textual termination of Plaintiff.

4) The Plaintiff requests reasonable attorneys' fees and costs.

5) The Plaintiff requests any and all other damages proven during these proceedings to fully compensate Plaintiff for all the damages he has suffered due to Defendant's actions or omissions.

## **PENDENCY OR DISPOSITION OF ANY RELATED STATE OR FEDERAL LITIGATION**

Plaintiff is not aware of any state or federal litigation that is of relevancy or relation to this matter.

## PROPOSED STIPULATIONS

The parties will file a separate Stipulation of Facts.

## IDENTIFICATION OF CONTROLLING ISSUES OF LAW

Plaintiff does not know of any controlling issues of law which warrant pretrial discussion in this matter.

Plaintiff's understanding of what laws are applicable in this matter includes, but is not limited to, the following governing laws:

1. Mont. Code Ann. § 39-2-904(1)(b);
2. Mont. Code Ann. § 39-2-904(1)(c);
3. Mont. Code Ann. § 39-2-905(1);
4. Mont. Code Ann. § 39-2-803;
5. Mont. Code Ann. § 35-14-732;
6. Mont. Code Ann. § 72-31-414;
7. Mont. Code Ann. § 39-02-905;
8. Mont. Code Ann. § 39-02-905(3);
9. Mont. Code Ann. §27-1-311.

## IDENTIFICATION OF INDIVIDUAL KNOWN OR BELIEVED TO HAVE INFORMATION THAT MAY BE USED IN PROVING OR DENYING ANY PARTY'S CLAIMS OR DEFENSES

Plaintiff has served and filed his initial disclosures. Plaintiff reasserts the individuals identified in his Rule 26 (a)(1) Initial Disclosures, as follows:

1. Lisa Gladstone is the current Board President Chairperson of Northern Engineering & Consulting, Inc., (herein referred to as "NECI") and was the President of NECI during the occurrence of all relevant facts in this matter.

2. Wallace Gladstone is the registered agent of NECI.

3. Guy Ahlstrom is NECI's Board Secretary.

4. Terry Freeman is an NECI Board Member. Michael MacFarlane is NECI's Board Vice President.

5. John Kluck is NECI's Board Treasurer.

6. Holly Worth is the NECI Human Resources representative who served as the initial contact person for communications and correspondences regarding Mr. Springer's terminations, including, the terms and conditions of his termination.

7. Scott Hedglin is the contact person for Architecture 118, a client that Jay Springer lost in his transition out of NECI's employment, due to contact issues caused by NECI's failure to provide requisite authorizations to Verizon for Mr. Springer to retain his business number.

8. Adam Sinderman is the contact person for Ramaker, a cell tower site client that Jay Springer lost in his transition out of NECI's employment, due to contact issues caused by NECI's failure to provide requisite authorizations to Verizon for Mr. Springer to retain his business number.

9. John Healey, Sr., is a former NECI employee who was also terminated on a- what is believed to be- pre-textual basis. Mr. Healy was allegedly terminated for failure to

complete a drug test, despite other employees repeatedly failing drug tests. After Mr. Healy's termination, Lisa Gladstone (please see above) remarked to Mr. Springer that Mr. Healy was actually terminated due to dissatisfaction with certain aspects of his work, but "sometimes you just have to get creative to get rid of someone". This occurred only a few weeks prior to Mr. Springer's termination.

10. This list is not exhaustive of individuals who may potentially know or be capable of providing information relevant to the events of this matter. Plaintiff may add additional individuals or entities to this list as the discovery process is completed.

## SUBSTANCE OF ANY INSURANCE AGREEMENT

Plaintiff is not informed or aware, nor in possession of any insurance policy and/or coverage in this matter.

## SETTLEMENT STATUS AND NEUTRAL EVALUATION

Subsequently, Plaintiff extended a settlement offer on November 24th, 2021, which Defendant rejected. The rejected offer resulted in this pending case. No settlement discussions have occurred between parties since filing of this suit. Plaintiff is agreeable to mediation or a settlement conference.

## SUITABILITY OF SPECIAL PROCEDURES

Plaintiff does not believe that there are any special procedures suitable for pretrial discussion.

DATED this 30th day of May, 2022.

HOINES LAW OFFICE, P.C.

_____
Nathan J. Hoines
Kelli A. Cummings
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was duly served upon the following by U.S. Mail or hand-delivery on the 30th day of May, 2022, at the address listed below:

Cory Laird
Laird Cowley, PLLC
2315 McDonald Avenue, Suite 220
PO Box 4066
Missoula, MT 59806

*Via U.S. Mail*

HOINES LAW OFFICE, P.C.