# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

|  |  |
|---|---|
| JAY SPRINGER,<br><br>        Plaintiff,<br><br>v.<br><br>NORTHERN ENGINEERING &<br>CONSULTING, INC.,<br>        Defendant. | **CV-22-35-GF-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

Defendant and Counterclaimant Northern Engineering & Consulting, Inc., ("NECI") filed a motion for summary judgment on August 25, 2023. (Doc. 32.) Plaintiff and Counter-Defendant Jay Springer ("Springer") opposes this motion. (*See* Doc. 44.) Springer filed a motion for summary judgment on October 13, 2023. (Doc. 50.) NECI filed a motion to strike, or in the alternative, deny Springer's untimely motion for summary judgment. (Doc. 54.) Springer filed a motion in limine on October 2, 2023. (Doc. 45.) NECI opposes this motion. (Doc. 52.) The Court held a motion hearing on November 9, 2023, in Great Falls, Montana. (Doc. 60.)

The Court will address NECI's motion for summary judgment. The Court also will address Springer's motion for summary judgment and NECI's motion to strike. The Court will address Springer's motion in limine in a future order.

## FACTUAL AND LEGAL BACKGROUND

This action concerns Springer's former employment relationship with NECI. Springer began working for NECI as a project manager in Havre, Montana in August 2012. (Doc. 6 at 3.) NECI and Springer entered into various purchase agreements for the purchase of NECI stock during Springer's employment. (*Id.* at 4.)

NECI terminated Springer on November 12, 2021. (*Id.* at 6.) Springer received a letter detailing his termination ("November 2021 letter"). (*Id.*) The November 2021 letter lists "lack of work" as the reason for Springer's termination. (*See* Doc. 4 at 9.) NECI claims that several important clients refused to continue working with Springer or refused to work with Springer on future projects. (Doc. 6 at 6.)

Springer brings claims for wrongful discharge against NECI, pursuant to Mont. Code. Ann. § 39-2-904(1)(b), and Mont. Code Ann. § 39-2-904(1)(c) ("Claim I"); ("Claim II"). (Doc. 4 at 4-5.) Springer further asserts that NECI blacklisted him by failing to provide the necessary authorizations for Verizon to enable Springer to retain his phone number ("Claim III"). (*Id.* at 5.) Springer also brings a claim that NECI breached its shareholder agreement when it allegedly pretextually terminated

Springer and attempted to purchase its shares from Springer at a below market rate ("Claim IV"). (*Id.* at 6-7.) Springer also asserts that NECI breached its fiduciary duty that it owed Springer (second Claim IV, hereinafter known as "Claim V"). (*Id.* at 7.) Springer seeks damages and punitive damages in addition to attorney's fees and costs. (*Id.* at 8.)

NECI asserts a counterclaim against Springer. (Doc. 6.) NECI argues that the terms of the stock purchase agreement require Springer to sell his shares of NECI back to NECI at the price per share known to NECI at the time of termination. (Doc. 6 at 26-28.) NECI seeks a determination of the parties' respective rights and interests. (*Id.* at 29.) NECI prays that the Court enter declaratory judgment that Springer must accept NECI's payment for Springer's NECI shares and determine that Springer has no right to continued ownership of the NECI shares. (*Id.* at 30.)

Springer filed this action in the Montana Twelfth Judicial District Court, Hill County on January 9, 2022. (Doc. 1-2 at 1.) NECI filed its notice of removal on April 7, 2022. (*See id.*) The Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## LEGAL STANDARD

The Court will grant summary judgment when the moving party demonstrates both an absence of material facts or issues and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of establishing the

basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine factual dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The summary judgment inquiry requires examining the evidence, and inferences drawn therefrom, in the light most favorable to the nonmovant. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014.) Once the movant has met this initial burden, however, the party opposing the motion "may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 447 U.S. at 323.

## DISCUSSION

The Court will consider collectively NECI's and Springer's motions for summary judgment. The Court recognizes that Springer filed his motion for summary judgment without providing time for a response to the motion by NECI, in violation of the Court's scheduling order. (*See* Doc. 17) Courts in the Ninth Circuit have exercised discretion in striking motions filed in violation of court established deadlines where the movant failed to seek leave of court. *See DZ Bank AG Deutsche*

4

*Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*, No. C14-5880JLR, 2015 WL 12930131, at *1 (W.D. Wash. Dec. 10, 2015) (collecting cases where courts in the Ninth Circuit exercised their discretion to strike untimely motions when the movant failed to seek leave, and failed to prove excusable neglect or other good cause as to why the movant violated the court's scheduling order.) The Court will consider Springer's motion for summary judgment because Springer's arguments substantially mirror his response to NECI's motion for summary judgment. (*Compare* Docs. 44, 47.) The Court cautions Springer, however, that future untimely motions will not be permitted.

The Court will consider Springer's claims I and II together. The Court will assess Springer's claim III independently. The Court then will examine Springer's claims IV and V and NECI's counterclaim together.

### A. Springer's Claims I and II.

Springer asserts two claims under the Montana Wrongful Discharge of Employment Act: lack of good cause for termination and failure of NECI to follow the express provisions of their personnel policy. (Doc. 4 at 4-5.) It remains undisputed that NECI terminated Springer on November 12, 2021. (*Id.* at 2.)

Springer states that the November 2021 letter listed "lack of work" as the sole reason for termination. (Doc. 44 at 2.) NECI claims good cause existed for Springer's termination because Springer allegedly alienated several major Indian

tribe clients to the point that those clients refused to work with Springer. (Doc. 33 at 7.) The core of Springer's claim I is why NECI terminated Springer and whether that reason amounts to good cause. The parties' positions indicate that a genuine dispute of material fact exists as to why NECI terminated Springer.

Springer contends that *Galbreath v. Golden Sunlight Mines*, 890 P.2d 382 (Mont. 1995), precludes NECI from admitting collateral evidence of Springer's termination beyond the "lack of work" reason stated in the November 2021 letter. (*Id.* at 3.) Springer's contention proves unavailing. The Montana Supreme Court recently interpreted *Galbreath* in *Smith v. Charter Communications, Inc.*, 592 P.3d 871 (Mont. 2023). The Montana Supreme Court in *Smith* determined that "[*Galbreath*] excludes irrelevant evidence that does not tend to make the existence of the discharge reason in the termination letter more or less probable; conversely, [*Galbreath*] does not exclude evidence that is relevant to support the stated reason for discharge in the termination letter." *Id.* at 876. The Montana Supreme Court commented further that "evidence offered to 'substantiate the reasons [] already given in the termination letter' are admissible." *Id.* (citing *McConkey v. Flathead Elec. Coop.*, 125 P.3d 1121, 1127 (Mont. 2005)).

NECI claims that its "lack of work" rationale stemmed from Springer allegedly alienating major Indian tribe clients to the point that those clients refused to continue working with NECI if Springer continued working on their projects.

6

(Doc. 33 at 7-10.) The Court determines that NECI allegedly losing work based on Springer's alienation of major Indian tribe clients serves to substantiate the reason for Springer's termination due to "lack of work." *Smith*, 592 P.3d at 876.

NECI argues that it conducted multiple exit interviews with Springer, including interviews on November 12, 2021, November 15, 2021, November 18, 2021, and November 22, 2021. (Doc. 33 at 16-17.) Springer responds that none of those communications amounted to an exit interview. (Doc. 44 at 14.) The parties' positions indicate that there exists a genuine dispute of material fact as to whether NECI conducted an interview with Springer, and, if so, whether that interview amounted to an exit interview or other process required under NECI's disciplinary procedures. The Court declines to grant summary judgment to either party on Springer's claims I or II.

## B. Springer's Claim III.

Springer asserts a claim of blacklisting under Mont. Code. Ann. § 39-2-803. (Doc. 4 at 5-6.) Springer's claim stems from his inability to maintain his phone number, which was originally assigned to NECI's corporate account. (Doc. 44 at 15-16.) Mont. Code. Ann. § 39-2-803 provides as follows:

> If a company or corporation in this state authorizes or allows any of its agents to blacklist or if a person does blacklist any discharged employee or attempts by word or writing or any other means to prevent any discharged employee or any employee who may have voluntarily left the company's service from obtaining employment with another person . . . the company, corporation, or

person is liable in punitive damages to the employee prevented from obtaining employment, to be recovered in a civil action . . ..

*Id.* The Court recognizes that the Montana blacklisting statute has relatively few cases interpreting its elements or requirements. *See Sullivan v. State of Montana, Department of Revenue*, No. CDV-2004-959, 2006 WL 4701564 (Mont. Dist. Nov. 28, 2006). Courts in the District of Montana have determined that a blacklisting claim cannot be supported by "conclusory formulaic assertions." *See Addington v. Prince Telecom, LLC*, No. CV 15-128-M-DWM, 2016 WL 3079695, at *2 (D. Mont. May 31, 2016). The Court notes that the analysis presented in *Hill v. Big Horn Cnty. Elementary Sch. Dist. 2 (Arrow Creek Elementary Sch. Dist.)*, No. CV 20-42-BLG-SPW-TJC, 2021 WL 835524 (D. Mont. Feb. 16, 2021), report and recommendation adopted, No. CV 20-42-BLG-SPW, 2021 WL 825038 (D. Mont. Mar. 4, 2021), proves persuasive.

In *Hill*, the U.S. Magistrate Judge considered whether a plaintiff's claim that defendants failed to provide him with a written certification of proof of work amounted to blacklisting. *Id.* at * 8. The U.S. Magistrate Judge determined that the plaintiff failed to establish "how, and by whom, a certificate of employment is required; when he requested the certificate; when it was refused; or what job prospects he lost due to a lack of a certificate." *Id.* The U.S. Magistrate recommended that the plaintiff's blacklisting claim be dismissed without prejudice. *Id.*

Springer alleges that NECI failed to provide the necessary authorizations for him to keep his phone number, and, as a result, he lost at least one project, that being with "Ray maker the cell tower company." (Doc. 44-14 at 1.) Springer claims also that NECI solicited letters from employees, clients, and neighbors requesting negative information about Springer to spread word that Springer was a "poor employee and person." (Doc. 47 at 18.) The Court determines that these letters, presented in Document 46, exhibits 4-9, are conclusory, lack context, and fail to demonstrate how NECI prevented Springer from acquiring work. The letters do not support Springer's blacklisting claim.

Springer's blacklisting claim, stemming from his inability to retain his phone number, proves distinguishable from *Addington* and *Hill*. Springer's blacklisting claim overcomes the admittedly low requirement of exceeding a "conclusory formulaic assertation*." Addington*, 2016 WL 3079695 at \*2. The Court, viewing the evidence and all inferences drawn therefrom in the light most favorable to Springer with respect to NECI's motion for summary judgment, determines there exists a genuine dispute of material fact. Springer and NECI disagree as to which party possessed responsibility to transfer and retain Springer's phone number. Springer and NECI also disagree as to whether Springer was prevented from obtaining employment from another person during the brief period where he did not have his

phone number. The Court declines to grant summary judgment to either party on this claim.

### C. Springer's Claims IV and V, and NECI's Counterclaim.

Springer's claims IV and V, and NECI's counterclaim concern NECI stock purchased by Springer at various points during his employment. Federal courts exercising diversity jurisdiction must apply the substantive law of the state in which they are located. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Montana Supreme Court has determined that the interpretation of a written agreement presents a question of law. *Moore v. Goran, LLC*, 400 P.3d 729, 732 (Mont. 2017). "A contract is to be taken together, as a whole, to give effect to every part if reasonably practicable, each clause helping to interpret the other." *Id.* (citing Mont. Code Ann. § 28-3-202). "When interpreting a written contract, the court should determine the intention of the parties from the writing alone if possible." *Id.* (citing Mont. Code Ann. § 28-3-303). "A court's duty is to enforce contracts as they are written." *Id.* (citing *Hein v. Fox*, 254 P.2d 1076, 1080 (Mont. 1953)).

It is undisputed that Springer purchased stock from NECI pursuant to stock purchase agreements on December 1, 2017, October 31, 2019, May 7, 2020, and September 5, 2020. (Doc. 33 at 22.) All of Springer's NECI stock purchases expressly incorporate the Stock Purchase Agreement of September 15, 2012 ("stock purchase agreement"). (*See* Doc. 34-8 at 1, 3, 5, 7.) ("The buyer agrees to execute

an Addendum to the Stock Purchase Agreement of September 15, 2012 in a form

satisfactory to the Company acknowledging that he agrees to be bound by the terms

and conditions of that Agreement.")

The stock purchase agreement provides in Section 5: Termination of

Employment:

> If a Shareholder's employment by the Company is terminated, voluntarily or
> involuntarily (except by death), with or without cause, that Shareholder shall
> be deemed to have made an offer to sell all of that Shareholder's shares to the
> Company. The purchase shall be at the price established at Section 7.1 and
> shall be paid in the manner set forth at Section 9.1,

(Doc. 34-9 at 3.) Section 7.1, titled "Purchase Price," provides:

> The Company and Shareholders agree that the purchase price of each share of
> stock shall be the Book Value of each share of stock of the Company owned
> by each Shareholder, reduced by the unpaid balance owing on any obligation
> that is secured by that Shareholder's shares of stock in the Company . . ..

(*Id*. at 4.) Section 9.1, titled "Terms of Purchase," provides in pertinent part:

> The purchase price for a sale arising under Section 3 and 5 shall be paid in
> Sixty equal monthly payments including at the interest rate of seven and one-
> half percent (7.5%) per annum on the unpaid balance. The first payment shall
> be due one month from the date the transaction is closed, and the remaining
> payment shall be due at consecutive monthly intervals thereafter . . .. At
> closing, the selling Shareholder shall deliver to the purchaser certificates duly
> endorsed for transfer and in good delivery form, representing all shares sold
> and good title thereto, free of security interest claims and equities . . ..

(*Id*. at 6.)

The Court concludes that Section 5: Termination of Employment, permitted

NECI to accept Springer's offer to sell his NECI shares upon his termination. The

Court determines also that NECI accepted Springer's offer at the "Book Value" of

his shares *at the time of termination*. (emphasis added.) NECI accepted Springer's offer to sell his shares of NECI stock at a price of $467.50 per share. (Doc. 34-7 at 1.) Springer owns 52 shares of NECI stock, leading to a total purchase price of $24,310.00. (*Id.*)  The Court will apply this conclusion to Springer's remaining claims and NECI's counterclaim.

### i)    Springer's Claim IV

Springer claims that NECI breached the shareholder agreement by pretextually terminating Springer, misreporting the value of his shares, and engaging in undervaluation. (Doc. 6 at 7.) Springer's arguments prove unpersuasive.

The Court determines that NECI did not breach the terms of the shareholder agreement because the time for its performance has not yet occurred. NECI must tender the purchase price in sixty equal monthly payments, including at the interest rate of seven and one-half percent (7.5%) per annum on the unpaid balance, beginning one month after Springer closes the transaction and delivers the stock purchaser certificates. The total price to be paid is $24,310.00, the price accepted by NECI on November 12, 2021. (Doc 34-7 at 1.)

Springer, in contrast, was obligated to deliver the stock certificates upon NECI's acceptance of his offer post-termination on November 12, 2021. Springer breached this agreement when he failed to deliver. NECI's offer to buy Springer's shares at the December 31, 2021 valuation of $367.74 per share has no effect because

NECI already had accepted Springer's offer to sell his shares at the price of $467.50 per share. (*See* Doc. 34-11.) Springer's Claim IV is dismissed.

### ii)    Springer's Claim V

Springer claims NECI owes him the duties of "utmost good faith and loyalty" and that NECI breached this duty. (Doc. 6 at 7.) Springer offers no support for this accusation except for his contention that NECI violated the stock purchase agreement. (Doc. 44 at 20.) The Court determines that NECI has not breached the stock purchase agreement. The time for NECI's performance has not yet occurred because Springer has not provided or delivered the stock purchaser certificates. Springer's Claim V is dismissed.

### iii)    NECI's Counterclaim

NECI seeks declaratory judgment that Springer is ordered to sell his shares to NECI in accordance with the terms of the stock purchase agreement. (Doc. 33 at 26-27.) The Court agrees that Springer is required to sell his shares of NECI stock to NECI. The Court orders that NECI pay Springer a price of $467.50 per share, for a total of $24,310.00, the price accepted by NECI on November 12, 2021. (*See* Doc. 34-7 at 1.) The Court orders that NECI's payment must comply with the requirements of Section 9.1 of the stock purchase agreement. (*See* Doc. 34-9 at 6.) NECI's counterclaim is granted.

## ORDER

Accordingly, **IT IS ORDERED:**

1. NECI's motion for summary judgment (Doc. 32) is **GRANTED in part.**
   Springer's claim IV and V are dismissed.

2. NECI's motion for summary judgment (Doc. 32) is **GRANTED in part.**
   Springer is ordered to provide NECI the stock purchase certificates for his
   52 shares of NECI stock. NECI is ordered to pay Springer a total price of
   $24,310.00, or $467.50 per share. NECI shall tender this price in Sixty equal
   monthly payments, including at the interest rate of seven and one-half
   percent (7.5%) per annum on the unpaid balance, pursuant to the terms of
   the stock purchase agreement. NECI shall furnish the first payment one
   month after Springer delivers the stock purchase certificates.

3. NECI's motion for summary judgment (Doc. 32) is **DENIED in part.**
   Springer's claim I, II, and III are not dismissed.

4. Springers motion for summary judgment (Doc. 50) is **DENIED.**

5. NECI's motion to strike (Doc. 54) is **DENIED.**

6. Each party shall bear its own attorney's fees and costs.

   DATED this 21st day of November 2023.

Brian Morris, Chief District Judge
United States District Court